Filed 8/14/26  In re D.G. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| In re D.G. et al., Persons Coming Under the Juvenile Court Law. | C104771 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY , <br>     Plaintiff and Respondent, <br><br> v. <br><br> M.M., <br>     Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2023-0000335) |

Appellant M.M. (mother) appeals from the juvenile court's 18-month status review hearing orders that terminated reunification services and did not return David G. and Daniel G. (minors) to mother under Welfare and Institutions Code[1] section 366.22.

Mother contends insufficient evidence supports the juvenile court's decision not to return the minors to mother.  She further claims the court erred because corporal punishment is not within the scope of the juvenile court's jurisdiction and is not sufficient for jurisdiction or removal.  We affirm.

---

[1]     Further undesignated section references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

Mother is the biological mother of five siblings, including David G. and Daniel G.[2] Only the minors David G. and Daniel G. are subject to this appeal.

I

*Section 300 Petitions*

On September 19, 2023, the San Joaquin County Human Services Agency (Agency) filed original petitions on the siblings under section 300, subdivisions (b)(l) and (g). The petition alleged the siblings suffered or were at substantial risk of suffering serious physical harm as a result of mother's failure or inability to supervise or protect the minors; the willful or negligent failure of mother to provide the minors with food, clothing, shelter, or medical treatment; and the inability of mother to provide regular care for the minors due to her substance abuse. The petition further alleged the minors had been left without any provision for support because the whereabouts and circumstances of the siblings' fathers were unknown.

The petition further alleged that in September 2023, child protective services obtained a protective custody order for the siblings because mother failed to meet the minors' educational, medical, physical, and hygiene needs. Specifically, mother failed to provide appropriate and adequate medical care for Daniel G. by failing to follow through with an initial orthopedic appointment on August 28, 2023, when Daniel G. broke his arm. Mother followed up on September 11, 2023, and rescheduled the appointment for September 28, 2023. Due to the appointment being rescheduled and prolonged, the minor's arm needed to be rebroken and set before applying a hard cast.

---

[2] This draft uses the term "minor(s)" to include only David G. and Daniel G. and "siblings" to describe all the children that were removed, respectively. When the siblings are mentioned it is inclusive of David G. and Daniel G. and all other siblings.

Mother failed to ensure the siblings attended school regularly.  She would sleep in, which caused them to miss the bus.  And when the siblings did attend school, they had poor hygiene and would hoard food to take home.

In addition, mother's residence was unsuitable and hazardous for the minors.  The front yard was littered with garbage, sharp tree cutting tools, and broken appliances.  Inside, the home had very little furniture.  There was dirt and food on the walls, and several of the siblings mentioned the home had cockroaches.

Mother also had a history of substance abuse.  She failed and/or refused to rehabilitate from amphetamines.  Mother tested positive for amphetamines at the birth of two of the siblings.  After the positive drug tests, mother refused to participate in a drug program.

At the September 20, 2023 detention hearing, the juvenile court found leaving the minors in the home of the parents was contrary to their welfare.  The court ordered the minors detained, authorized supervised visits with mother, and continued the matter for a jurisdictional hearing.  The court admonished mother not to discuss the facts of the case during visits.

II

*Combined Jurisdiction And Disposition Hearing*

On October 12, 2023, the Agency filed a jurisdiction and disposition report recommending the juvenile court find the allegations in the first amended petition true and offer reunification services to mother, and that the siblings remain out of the home.

On November 14, 2023, the juvenile court held a combined jurisdiction and disposition hearing.  The court adopted the findings in the jurisdiction and disposition report.  It adjudged the siblings to be dependents of the juvenile court and found by clear and convincing evidence there was a substantial danger to the physical health, safety, protection, and physical and emotional well-being of the siblings if they were returned to the mother's home.  The court ordered reunification services for mother and that a

3

termination of reunification services hearing be held on or before March 12, 2025. Mother's case plan included compliance with court orders, participation in family counseling and parenting education, obtain suitable housing, and participation in drug testing and drug court.

## III

### *Combined Six- And 12-month Review Hearing*

After continuing the six-month review hearing several times, the juvenile court set a combined six- and 12-month review hearing. On December 3, 2024, the Agency filed a status review report with an updated case plan. The report recommended continuing reunification services for mother and the siblings. It indicated mother was unemployed and homeless because she left her job and moved out of her home when she entered residential treatment in September 2024. Although mother had no means of transportation, she consistently attended visits with the siblings. Mother completed one parenting course and was enrolled in a second parenting course. The Agency noted that mother struggled to properly parent and implement acceptable discipline during visits. She would become upset when coached or given advice on managing the children's behaviors.

Mother completed 20 individual counseling sessions but struggled to take accountability for the removal of the siblings. She then completed 15 additional sessions and did "extremely well" attending sessions and engaging in counseling. The Agency reported, however, that mother needed "a lot of redirection to focus on herself and not deflect." Mother agreed to engage in 10 more sessions.

Mother participated in drug court. She tested negative for drugs from December 2023 to March 2024, with the exception of a positive test for Oxycodone, which a doctor prescribed for mother following her cesarean section operation, and Fentanyl, which mother attributed to a recent gallbladder surgery and which could not be confirmed with lab testing.

On April 24, 2024, mother tested positive for amphetamines. She was not consistently attending group therapy and was not making progress in her treatment. Two months later, the drug court ordered her to wear a drug patch. She missed three drug tests and two drug court appearances. The court decided not to admit mother to a treatment facility because mother's new baby was going to receive heart surgery and mother would need to attend all his medical appointments.

Mother tested positive for methamphetamines twice in July 2024 and once in August 2024. Mother did not take accountability for the positive drug tests and alleged minors' father put the drugs in her drink. In September 2024, mother was admitted to inpatient treatment. She initially struggled to adjust to the facility and wanted to leave but was compliant after being told she risked termination from drug court based on her behavior.

The siblings continued to be placed in two resource family approval homes and visited with mother together twice a week. Mother was consistent with her visitation of the siblings and did well interacting and playing with the siblings. The Agency noted mother struggled to be coached by the visitation monitors and was very argumentative in front of the children. The siblings would shut down when mother became verbally aggressive to Agency staff. She was unwilling to implement any parenting techniques to discipline the siblings when they misbehaved.

On one occasion, Daniel G. threw shoes at and choked his siblings. Mother told the Agency staff that she would not put any of the siblings "on time out or get them in trouble during their visits" because "it was her time to be with her children." Agency staff expressed concern and asked mother how she would have handled the situation if they were at home. Mother responded that she would have " 'whooped' " Daniel G. if they were home. The report indicated mother continued to struggle to be accountable for her actions and blamed the children for the situation. The report recommended legal guardianship for the minors with their caretakers if reunification services were

5

terminated. The report concluded that "[i]f given more time, the likelihood of reunification is possible" because mother had "shown greater commitment in maintaining her sobriety and continuing in out-patient treatment while living in [a] sober living facility."

On January 8, 2025, the juvenile court held a combined six- and 12-month review hearing. The court adopted the findings in the review report, without objection from mother. The court found that returning the siblings to mother would create a substantial risk of detriment to the safety, protection, physical or emotional well-being of the siblings. It further found there was a substantial probability that the siblings would be returned to mother because mother had (1) consistently and regularly contacted and visited with the siblings, (2) made significant progress in resolving the problems that led to the siblings' removal, and (3) demonstrated the capacity and ability to complete the treatment plan and provide for the safety, protection, and physical and emotional well-being of the siblings. The court clarified that mother must demonstrate she has overcome the problems that led to removal of the siblings.

IV

*30-day Home Visit*

On March 11, 2025, the Agency filed a status report and updated case plan. Mother was living in a sober living facility and was employed at a job where she could still participate in outpatient services and visits with the siblings. She also completed further parenting education, but was still considered homeless. Mother expressed that she understood appropriate and safe discipline and agreed she must find ways to calm Daniel G. when he becomes physical with his siblings. Mother completed the additional 10 individual counseling sessions and demonstrated significant progress in addressing the goals toward family reunification.

Mother also completed parenting education and individual counseling and was in compliance with drug court. She consistently engaged in visitation with the siblings.

6

Though the report indicated mother made "significant progress in her case plan," the Agency recommended the juvenile court offer family maintenance services to mother and the siblings pending a 30-day assessment where the siblings were placed with mother. The case plan included objectives that mother "stop hitting the minors" and appropriately discipline the minors. At the March 12, 2025 review hearing, the juvenile court placed the minors, along with two of their siblings, on a 30-day visit with mother.

The juvenile court held a hearing on April 17, 2025, because the Agency received a hotline referral on or about April 11, 2025, indicating mother hit one of the siblings. There were no visible injuries but the sibling reported that mother hit the sibling on her arms and legs for discipline and she did not feel safe in the home. The sibling also reported mother allowed the minors to hit her. The siblings also reported mother was speaking negatively about their fifth sibling.

Counsel for the siblings expressed concern that mother was unable to have the siblings in the home and recommended the juvenile court remove the siblings from mother. Mother claimed she did not know she could not discipline the siblings with physical punishment. The juvenile court removed the siblings and terminated the 30-day visit. The court ordered supervised visits, additional services, 10 additional counseling sessions, and admonished mother not to use any physical discipline.

V

*18-month Review Hearing*

On April 25, 2025, the Agency filed an interim report that indicated mother's home was clean and she had food for the family. Mother ensured the siblings were ready for school on time despite mother being tired from working the graveyard shift at her job. The minors, however, were not completing their schoolwork regularly. David G. would complete a weeks' worth of schoolwork on the day it was due. The siblings understood their homework needed to be completed but there was no structure implemented to ensure the siblings did not fall behind. A social worker from the Agency explained to

7

mother that David G. was struggling in school and not completing his homework. The report also discussed the hotline referral related to mother hitting one of the siblings. The sibling expressed her belief that she was being hit because she and her sister fought a lot. The minors denied being hit by mother. The Agency had concerns that mother may have been targeting the reporting sibling after the hotline referral because she disclosed that she was being hit more than her siblings. The report further noted that after removal of the siblings, their maternal grandmother became upset with the reporting sibling and told her to "tell the truth and that she was not being hit."

Mother continued to struggle with appropriately disciplining the siblings. She admitted to spanking one of them. Mother said she was unaware that she could not hit the siblings; she felt hitting the siblings was justified because it was effective at stopping them from fighting. She was not receptive to parenting help or advice from service providers and would not redirect the siblings' behaviors during visits when they hit each other.

The report stated that during the 30-day home visit mother was working graveyard shifts, which may have impacted her parenting the children appropriately. Mother expressed that it was overwhelming for her. She previously told someone at her former sober living facility that "she was not sure if she was capable of doing this." At the start of the 30-day home visit, a social worker from the Agency expressed to mother that it could be stressful for her to transition from having no children in her care full time to having them at once with maintaining her sobriety. The social worker encouraged mother to ask for help and utilize her supports and coping skills.

The Agency expressed concern that mother continued to struggle to appropriately discipline the siblings despite completing parenting education twice. Mother failed to implement what she learned from the classes, which concerned the Agency given her history of abuse of the siblings. Despite expressing her desire to have the siblings returned, mother did not take accountability for her role in their removal or how her

8

behavior had impacted the reunification process. Despite making progress on her case plan and reaching extended home visits with the siblings, mother struggled to consistently demonstrate the ability to safety and appropriately parent the siblings. The Agency was concerned that mother acted out of spite toward the siblings and had not demonstrated the ability to manage the educational or behavioral needs of the siblings. Because mother "received over 12 months of reunification services and … had not demonstrated the behavioral changes that would mitigate the safety concerns the [A]gency had at the onset of this case over an extended period of time," the Agency recommended the juvenile court terminate reunification services.

On September 17, 2025, the juvenile court held a contested 18-month review hearing. The juvenile court received the March 11, 2025 status report, the interim report, drug court notes, treatment provider notes, counseling notes, and service logs into evidence. Mother did not submit any evidence but called an Agency social worker to testify. The social worker testified that if the 30-day visit had gone well then the Agency would have recommended family maintenance. After the juvenile court terminated the 30-day visit, mother missed multiple visits back-to-back. Although she had valid excuses for most missed visits, the social worker testified that this behavior raised a concern that mother may be relapsing or falling into old habits. Specifically concerning was that mother stopped communicating after she missed visits and did not request to make up visits.

The Agency advocated for mother's progress to change from adequate to minimal because mother received services for nearly 24 months, which was the maximum time allowed by statute, and the Agency did not believe mother was ready to have the siblings under her care even though the Agency provided her with reasonable services.

Mother's counsel claimed the juvenile court should return the siblings to mother because mother completed her "goal plan," overcame addiction, maintained her sobriety,

9

and their latest removal was related to physical discipline and not the reasons the siblings were originally removed.

The juvenile court terminated reunification services, adopted the findings of the interim review report, and set a periodic review hearing regarding the permanent plan as to the minors.

Mother appeals.

DISCUSSION

Mother claims insufficient evidence supports the juvenile court's denial of returning the minors to her at the 18-month review hearing. We disagree.

Following the 18-month review hearing, "the juvenile court must order a child returned to a parent's custody unless it finds, by a preponderance of the evidence, that return of the child will create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being." (*Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864, citing § 366.22, subd. (a).) "The standard for showing detriment is 'a fairly high one. It cannot mean merely that the parent in question is less than ideal, did not benefit from the reunification services as much as we might have hoped, or seems less capable than an available foster parent or other family member.' [Citation.] Rather, the risk of detriment must be *substantial*, such that returning a child to parental custody represents some danger to the child's physical or emotional well-being." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.) It is the Agency's burden to establish detriment. (§ 366.22, subd. (a)(1).)

In determining detriment, the juvenile court must consider whether the parent participated regularly, made progress, and cooperated or availed herself, himself, or themself of the services provided in the reunification plan. (*Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1748.) Mother argues that she completed her case plan, which indicated she ameliorated the reasons that led to the removal of the minors. Compliance with the reunification plan, however, is "an indicium of progress toward

10

family preservation," but it is not the only consideration in deciding whether a child should be returned to parental custody. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1139-1140.) " 'The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement.' " (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.) Ultimately, "the decision whether to return the child to parental custody depends on the effect that action would have on the physical or emotional well-being of the child." (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 899.)

We review the juvenile court's findings for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) Substantial evidence is "evidence that is reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case." (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at p. 1401.) If the reviewing court does not find substantial evidence of detriment, it must return the minor to parental custody. (*Ibid*.)

The juvenile court's order found "by clear and convincing evidence that return of the children to their mother at this time would create a substantial risk of detriment to the safety, protection, [and] physical or emotional well-being of the children." The court's order does not make specific findings as to each of the minors, nor did the court make such findings from the bench. Instead, the court adopted the findings in the interim review report. We presume the court understood and followed the law and properly considered the risk of detriment to each minor. (*In re Julian R.* (2009) 47 Cal.4th 487, 499.) Regardless, "[a] finding of detriment may be implied." (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1196; see also *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83-84 [implied finding appropriate where substantial evidence supports it].)

Sufficient evidence supports the juvenile court's finding that mother had not demonstrated, over an extended period of time, the behavioral changes that would mitigate the safety concerns the Agency had at the onset of this case, despite receiving

11

nearly 24 months of reunification services. Although mother made progress on her case plan and reached extended home visits with the minors, she struggled to consistently demonstrate the ability to safely and appropriately parent and discipline the minors.

Mother claims reversal of the orders denying the return of the minors is required because corporal punishment is not within the scope of the juvenile court's jurisdiction over the minors. Not so. Mother completed parenting education twice but was still not receptive to parenting advice. During visitation, mother time and again would not redirect or appropriately discipline the siblings. At the outset of the extended 30-day visit, mother's social worker encouraged her to ask for help and utilize her supports and coping skills; mother chose not to. Instead she reverted to using physical discipline, despite being admonished by the juvenile court not to and receiving parenting education on alternative discipline methods. Mother justified her behavior because she felt hitting was effective to stop the siblings from fighting. (*Georgeanne G. v. Superior Court*, *supra*, 53 Cal.App.5th at p. 867 [the juvenile court may consider a parent's lack of insight at the § 366.22 permanency review hearing].) Although physical violence against the minors was not a reason for their initial removal, it was supported by the evidence presented to the juvenile court, which made it proper for the court to consider mother's use of and advocacy for corporal punishment during the reunification period as evidence of her lack of insight concerning her responsibility for the events that led to removal of the minors. (*Id*. at pp. 867-868.)

During the 30-day visit, mother also demonstrated that she struggled to supervise and provide regular care for the minors' educational needs. The minors were not completing their schoolwork regularly under her care because she failed to implement a structure to support the minors' educational needs. David G. continued to struggle in school and was not regularly completing his homework. After the juvenile court terminated the 30-day visit, mother missed multiple visits, stopped communicating with

12

the Agency, and did not request to make up visits, which raised a concern that she may have fallen into old habits.

Mother's lack of progress during reunification created a continuing risk of detriment. She was unable or unwilling to apply what she had been taught in counseling and from her other services. The consequence was that the juvenile court reasonably could find, as it did, that mother had failed to improve sufficiently in her parenting abilities to resume custody of the minors.

## DISPOSITION

The juvenile court's orders are affirmed.


/s/
ROBIE, J.

We concur:


/s/
EARL, P. J.


/s/
MAURO, J.